# Burger *v.* Philadelphia.

*Negligence—Cities—Depression in street—Contractor.*

In an action by a woman against a city to recover damages for personal injuries caused by the sinking of the unpaved surface of a refilled trench on which plaintiff stepped at the crossing of a street, the negligence alleged was that in refilling the trench the earth had not been properly packed. The work of digging and refilling the trench had been done by a contractor and had been left by him three weeks before the accident, and the street had been thrown open during this time to public use. The contract under which the work was done was for the reconstruction of sewer inlets in all parts of the city. The contractor was not to do a particular piece of work for a fixed price, but such work as was directed at a price agreed upon for each particular kind of work required. When ordered the work was to be done in the presence of the inspector and the department reserved the right of absolute control and direction. Generally under the contract it was the duty of the contractor to repave the part of the street which he had torn up, but in this matter, as in all others, he was subject absolutely to the direction of the chief engineer. There was evidence that the city did not direct the paving over of the trench for the reason that it intended itself to repave the whole surface of the street. *Held*, (1) that if there was negligence in the manner of filling the trench, the city through its inspectors had notice of it; (2) that there was ample evidence to require the submission to the jury of the question whether having notice of the defects in the work, the city had accepted it from the

contractor, and opened the street to public use; (3) that the rule in
Painter v. Pittsburg, 46 Pa. 213, relieving a city from liability for the
negligence of an independent contractor did not apply under the circum-
stances of this case; (4) that a verdict and judgment for plaintiff should
be sustained.

Argued Jan. 16, 1900. Reargued March 19, 1900. Appeal,
No. 266, Jan. T., 1899, by defendant, from judgment of C. P.
No. 2, Phila. Co., June T., 1896, No. 574, on verdict for plain-
tiff, in case of Paul Burger and Ida Burger, his wife, in the
right of said Ida, v. City of Philadelphia. Before GREEN, C. J.,
McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTRE-
ZAT, JJ., on reargument. Affirmed.

Trespass for personal injuries. Before PENNYPACKER, P. J.
At the trial it appeared that on May 3, 1896, at about 5 P. M.,
Ida Burger while walking over the intersection of Turner street
and Erie avenue in the city of Philadelphia stepped on the un-
paved surface of a refilled trench and sank therein to her hips.
It appeared from the evidence that on April 14, a sewer inlet
had been put in at the place of the accident by William B. M.
Conklin who had a contract with the city for such work. The
provisions of this contract and the circumstances under which
the trench was left at the time the contractor quit work are
stated in the opinion of the Supreme Court. The court refused
to direct a verdict for defendant.

Verdict and judgment for plaintiff for $2,000. Defendant
appealed.

*Error assigned* among others was (5) refusal to give binding
instructions for defendant.

*Leonard Finletter*, assistant city solicitor, with him *Joseph W.
Catharine* and *John L. Kinsey*, city solicitor, for appellant.—
One who contracts with a competent person exercising an
independent employment to do a piece of work not in itself un-
lawful, or necessarily dangerous to others, according to the con-
tractor's own method, and without his being subject to control
except as far as the results of his work, will not be answerable
for the wrongs of such contractor, the subcontractor or his ser-
vants committed in the prosecution of such work: Painter v.

Mayor of Pittsburg, 46 Pa. 213; Hunt v..Penna. R. Co., 51 Pa. 475; Allen v. Willard, 57 Pa. 374; Ardesco Oil Co. v. Gilson, 63 Pa. 146; Reed v. Allegheny City, 79 Pa. 301; Wray v. Evans, 80 Pa. 102; City of Erie v. Caulkins, 85 Pa. 247.

To shift the burden of responsibility from the contractor to the city it must be shown as stated in First Pres. Congregation v. Smith, 163 Pa. 561, that there was an interference by the city; that as a result of the exercise of the power reserved the accident happened and plaintiff was injured thereby; that so far as concerned that part of the work the contractor acted merely as agent or servant of the city: Aiken v. City, 9 Pa. Superior. Ct. 502; Wray v. Evans, 80 Pa. 102.

The city was under no obligation when it turned over the work to the contractor to see that there was no negligence on his part. So long as he remained in charge of the work the city had no right to interfere: Allen v. Willard, 57 Pa. 374; Borough of Susquehanna v. Simmons, 112 Pa. 384; Thomas v. Altoona, etc., Electric Ry. Co., 191 Pa. 361.

*C. J. Hepburn*, with him *J. Barton Rettew* and *Benjamin C. Potts*, for appellees.—The contract was not independent: Sadler v. Henlock, 4 Ellis & Blackburn, 570; Allen v. Willard, 57 Pa. 374; Cincinnati v. Stone, 5 Ohio, 38; St. Paul v. Seitz, 3 Minn. 297.

Whether the contract was dependent or independent, the city is still responsible.

The case of Painter v. Pittsburg, 46 Pa. 213, was, it may be, in accordance with the greater weight of authority at the time it was decided. It was one of a line of cases based upon these cases in the English courts reversing the old case of Bush v. Steinman, 1 Bos. & Pul. 404 (1799), and in which the courts went as far towards the one extreme as Chief Justice EYRE, in Bush v. Steinman, had gone towards the other. But since the decision of Painter v. Pittsburg the courts of England, and of nearly every state in this country, have abandoned the position there held by them and adopted a modification of Bush v. Steinman, asserting the true version of the law to be that when one makes a contract with another for the doing of a certain work over whom, or his agents or servants, he retains no control other than that looking towards the mere results of the work, he is

not liable for the negligent acts of the contractor, or his agents or servants, done by them in the actual performance of the work contracted for and beyond the scope of the principal's authority under the contract, but if the performance of a duty is enjoined by the statute or the principal is charged therewith at law, or if the performance of a lawful contract necessarily will bring wrongful consequences to pass unless guarded against, and if the contract cannot be performed except under the right of the principal, the law will require the principal at his peril to see that due care is used to prevent harm, whatever the nature of his contract with those he employs.

It is a significant fact that every case without exception cited by Mr. Justice STRONG as authority for his application of the law to the facts in Painter v. Pittsburg, has been reversed by the court that handed it down. He relies in the first place upon a number of English cases, and cites Gray and Wife v. Pullen and Hubble, 32 Law Journal Reports, N. S. 265 (decided in the Queen's Bench, April 16, 1863), at some length as the latest exposition of the doctrine by the English courts, and he also cites, at very considerable length, the following American cases: Barry v. St. Louis, 17 Mo. 121, Hilliard v. Richardson, 3 Gray, 349, and Blake v. Ferris, 1 Selden, 48, and refers to Pack v. The Mayor, etc., of N. Y., 4 Selden, 222, and Kelly v. The Mayor of New York, 1 Kern. 432, as cases in which the New York court of appeals has followed its decision in Blake v. Ferris. Now, it happens that the case of Gray v. Pullen and Hubble, supra, is the very case upon which the English cases turn, the court of exchequer chamber having on appeal reversed the Queen's Bench. The facts in this case were almost precisely similar to those in the case now before the court.

Barry v. St. Louis, supra, was disapproved by the supreme court of Missouri in Welsh v. City of St. Louis et al., 73 Mo. 71 (1880).

The Supreme Court of Massachusetts has, in the cases of Gorham v. Gross, 125 Mass. 232 (1878), Sturges v. Theological Education Society, 130 Mass. 414 (1881), and Khron v. Brock, 144 Mass. 516 (1887); more gradually, but none the less surely, receded step by step from the position taken by it in Hilliard v. Richardson, supra, until, in Woodman v. Metro-

politan Railroad Co., 149 Mass. 335 (1889), it took its stand flatfooted upon the doctrine laid down by the court of exchequer chamber in Gray v. Pullen and Hubble, supra.

The court of appeals of the state of New York as early as 1858, in the case of Storrs v. City of Utica, 17 N. Y. 104, denied the correctness of the application of the doctrine of independent contractorship made by it to the facts in the case of Blake v. Ferris.

OPINION BY MR. JUSTICE FELL, May 14, 1900:

The fifth assignment is to the refusal of the court to direct a verdict for the defendant, and it gives rise to the only question to be considered.. The plaintiff was injured by the sinking of the unpaved surface of a refilled trench on which she stepped at the crossing of a street. The negligence alleged was that in refilling the trench the earth had not been properly packed. Her testimony made out a prima facie case against the city. The defense was (1) that the work was in the hands of a contractor and had not been completed; (2) that the contractor was an independent contractor over whose method of doing the work the city exercised no supervision or control. As to the first ground of defense the testimony was meager, and whether the work had been completed and turned over to the city was left mainly to inference, but there was enough testimony on the subject to raise a distinct issue of fact. The work of constructing the sewer inlet had been completed nearly three weeks before; the street had been thrown open during this time to public use, and the contractor had left it and gone to other work. The surface of the trench had not been repaved, and the contention of the city that the work had not been completed was based upon that fact alone. Generally under the contract it was the duty of the contractor to repave the part of the street which he had torn up, but in this matter as in all others he was subject absolutely to the direction of the chief engineer. He was not, as will be shown hereafter, to do a particular piece of work for a fixed price, but to do such work as was directed at a price agreed upon for each particular kind of work required. The city inspector testified that the work had been completed nineteen days before the accident happened, and in explaining why he spoke of it as

completed while the surface remained unpaved he said that the whole street had to be paved. The paving of the whole street was not the work of the contractor, and it may fairly be inferred from the testimony that the city did not direct the paving over of the trench for the reason that it intended to repave the whole surface of the street. If this was the case the jury might well find that the work had been completed by the contractor and accepted by the city.

The contract under which the work was done was a contract to furnish the material and labor for the reconstruction of sewer inlets in any part of the city of Philadelphia during the year 1896 as required by the department of public works, and subject to its direction and approval. For a part of the work a fixed price was to be paid, as for stone, brick or iron inlets of different patterns, for iron gratings, manholes, terra-cotta pipe, etc., but in most cases the work was to be paid for at a fixed price per foot or yard as excavating, masonry, curving, paving, etc. No particular work was specified, and none might be ordered. When ordered the work was to be done in the presence of an inspector, and the department reserved the right of absolute control and direction. There was no evidence that the department exercised any right except that of supervision, or that the contractor received any directions from any one acting for the city.

Whether in view of the exceptional character of this contract the city is relieved of liability for the negligence of its contractor under the ruling in Painter v. Pittsburg, 46 Pa. 213, and the line of cases which have followed it, need not be considered. If there was negligence in the manner of filling the trench the city through its agents appointed to supervise and inspect the work had notice of it; and there was ample evidence to require the submission to the jury of the question whether having notice of the defects in the work it had accepted it from the contractor and opened the street to public use.

The judgment is affirmed.